IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINCOLN NATIONAL LIFE INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TCF NATIONAL BANK, | ) ) ) |
| Defendant. | ) ) |
| TCF NATIONAL BANK, | ) ) |
| Counter-Plaintiff, | ) ) ) |
| v. | ) ) |
| LINCOLN NATIONAL LIFE INSURANCE CO., and THE KLARCHEK FAMILY TRUST, | ) ) ) ) |
| Counter-Defendants. | ) |

Case No. 10 C 6142

Judge Virginia M. Kendall

### MEMORANDUM OPINION AND ORDER

Plaintiff Lincoln National Life Insurance Co. ("Lincoln National") sued Defendant TCF National Bank ("TCF") for failing to fully honor a letter of credit. TCF asserted a counterclaim against Lincoln National for declaratory judgment and attorneys fees and costs because it paid the full amount available to Lincoln National under the letter of credit. Lincoln National moves for judgment on the pleadings, or Rule 12(b)(6) dismissal, on TCF's affirmative defenses and counterclaim. Lincoln National also moves for judgment on the pleadings on its Complaint. Finally, Lincoln National seeks to dismiss TCF's third-party complaint for improper joinder under Federal Rule of Civil Procedure 20. For these reasons, the Court denies Lincoln National's motions.

**BACKGROUND**

This case is about related two agreements. The main agreement at issue is the Irrevocable Standby Letter of Credit ("Letter of Credit") between Lincoln National and TCF. The second agreement is the Loan Agreement between Lincoln National and a third party, Sunset Village Limited Partnership ("Sunset"). The Loan Agreement is the contract underlying the Letter of Credit and it contained the material terms for amending the Letter of Credit.

Sunset, a party not directly involved in this litigation, needed funds for the construction and maintenance of its mobile home community. (Affirm. Defense ¶¶ 4-5.) Lincoln National agreed to provide Sunset funds for this purpose, and secured its loan with a Letter of Credit issued by TCF. (Answer ¶¶ 6-7.) When TCF issued the Letter of Credit on June 20, 2006, it was in the amount of $7,075,000. (*Id.* ¶ 6.) The terms of the Letter of Credit were straightforward. Upon Lincoln National's presentation to TCF of two documents—a sight draft and original Letter of Credit—TCF was contractually obligated to pay Lincoln National the outstanding balance of the Letter of Credit. (Compl. Ex. A.)

The Loan Agreement between Lincoln National and Sunset was the contract underlying the Letter of Credit. (Answer ¶ 12.) The Loan Agreement defined the terms of Lincoln National's loan to Sunset. (Answer Ex. 1.) Critically, it also set forth the procedure for reducing the outstanding balance of the Letter of Credit:

> [T[he Letter of Credit shall be reviewed by [Lincoln National] and appropriate reductions made every six (6) months after capital improvements are made to the property upon written notice of the amount of the reduction to [Sunset] and [TCF], such written notice of reduction shall not be later than thirty (30) days after [Sunset's] request for the reduction.

(Answer ¶ 12.)

After the June 2006 issuance of the Letter of Credit in the amount of $7,075,000, Sunset and Lincoln National amended the Letter of Credit a number of times to reduce the outstanding balance. Specifically, TCF issued amended Letters of Credit on May 2, 2007; May 8, 2008; January 16, 2009; August 13, 2009; and January 18, 2010. (*Id.* ¶ 13.) Lincoln National asserts that, in accordance with the terms of the Loan Agreement, for each reduction Sunset made a written request to Lincoln National to reduce the outstanding balance, and upon Lincoln National's assent, TCF would issue an amended Letter of Credit. (*Id.* ¶ 13; Compl. Ex. H.) While TCF does not admit that exact process was followed for each of the reductions, both TCF and Lincoln National agree that by January 18, 2010, the Letter of Credit had been reduced to $3,189,693.69. (*Id.*)

The dispute here hinges on whether any additional reductions were validly made to the Letter of Credit. From January 26, 2010 until April 28, 2010, TCF made four construction disbursements, in the cumulative amount of $1,281,832.54, to Sunset for improvements on its property. (Compl. Ex. H.; Countercl. ¶ 17.) On April 28, 2010, Lincoln National refused to approve Sunset's request for reduction of the Letter of Credit by $1,281,832.54 because the Loan Agreement allowed only one reduction every six months, and the most recent reduction was in January 2010. (Answer ¶ 15.) When Sunset defaulted on the loan in July 2010, Lincoln National was relieved of its obligation to reduce the Letter of Credit. (*Id.* ¶ 17-20.)

TCF read the situation differently. TCF believed that Sunset had provided Lincoln National with the appropriate documentation to reduce the Letter of Credit. (Countercl. ¶¶ 18-20.) Based on previous interactions, TCF deemed the transfer of documentation sufficient to reduce the amount of the Letter of Credit because Lincoln National "implicitly consented" to the reduction. (*Id.* ¶ 21.)

3

As a result, TCF reduced the Letter of Credit by $1,281,832.54. (*Id.* ¶¶ 17-20.) According to its calculation, the outstanding balance was $1,907,861.15. (*Id.* ¶ 21.)

On August 30, 2010, Lincoln National presented TCF its Letter of Credit in the amount of $3,189,693.69, and a sight draft dated August 30, 2010. (*Id.* ¶ 23.) TCF, having reduced the Letter of Credit, wire transferred to Lincoln National $1,907,861.15. (*Id.* ¶ 24.) Lincoln National seeks to recover the shortfall of $1,281,832.54, alleging that TCF failed to fully honor the Letter of Credit. (Answer ¶ 1.)

## STANDARD OF REVIEW

A party can move for judgment on the pleadings after the filing of the complaint and answer. Fed. R. Civ. P. 12(c). The standard for a Rule 12(c) motion is the same as a motion to dismiss under Rule 12(b)(6); the Court views all facts in a light most favorable to the nonmoving party, which is TCF. *See Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010). By examining the pleadings, the Court must determine if the undisputed material facts entitle the moving party to judgment on the merits. *See. e.g., Continental X-Ray Corp. v. Home Indem. Co.*, No. 96 C 5250, 1997 WL 102537, at *2 (N.D. Ill. March 5, 1997) (Andersen, J.). Where, as here, the plaintiff is moving for judgment on the pleadings, the Court will grant the motion only if "it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

## DISCUSSION

Lincoln National seeks relief on three grounds: (1) judgment on the pleadings on its Complaint; (2) judgment on the pleadings, or, in the alternative, dismissal under Rule 12(b)(6) of

TCF's affirmative defense and counterclaim; and (3) dismissal of TCF's Third Party Complaint for improper joinder under Rule 20.

I.      **Judgment on the Pleadings: Complaint, Affirmative Defense, and Counterclaim**

Three of Lincoln National's motions all turn on the same issue, namely, the validity of certain reductions totaling $1,281,832.54 that TCF made to the Letter of Credit from January 18, 2010 until April 28, 2010. As such, the Court will analyze these motions together. First, Lincoln National seeks judgment on the pleadings for its Complaint, which alleged wrongful discharge of the Letter of Credit (Count I) and breach of contract (Count II). Second, Lincoln National moves to dismiss TCF's affirmative defense alleging that Lincoln National consented to the reduction in the Letter of Credit. Third, Lincoln National moves to dismiss TCF's two counterclaims, which seek declaratory judgment and attorneys' fees and costs, as well as contribution against the Klarchek Family Trust, a third party defendant that TCF brought into the case.

Under Illinois law, a "letter of credit" is "a definite undertaking that satisfies the requirements of Section 5-104 by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value." 810 ILCS 5/5-102. Section 5-104, which outlines the "formal requirements" for a letter of credit, further states that "[a] letter of credit, confirmation, advice, transfer, amendment, or cancellation may be issued in any form that is a record and is authenticated (i) by a signature or (ii) in accordance with the agreement of the parties." 810 ILCS 5/5-104.

A letter of credit transaction consists of three independent contracts. First, there is the contract between the beneficiary (Lincoln National) and the customer or applicant (Sunset). *Jupiter*

*Orrington Corp. v. Zweifel*, 469 N.E.2d 590, 592 (Ill. App. Ct. 10984). This is the contract underlying the Letter of Credit, which was the Loan Agreement. Second, the customer or applicant (Sunset) "procures a letter of credit, often from a bank [TCF], in return for consideration or collateral." *Id.* Finally, there is the letter of credit contract itself, where the bank (TCF) agrees to pay the beneficiary (Lincoln) the amount of the letter of credit, given that the beneficiary satisfies the conditions in the letter of credit. *Id.*

Here, the Letter of Credit is a standby letter of credit. For a standby letter of credit, "the issuer (bank) agrees to pay the beneficiary upon presentment of certain documentation indicating that the purchaser has defaulted on a payment obligation." *First Arlington Nat. Bank v. Stathis*, 413 N.E.2d 1288, 1293 (Ill. App. Ct. 1980). The documents required by the Letter of Credit are a sight draft and original Letter of Credit. (Compl. Ex. A.)

Lincoln National contends that TCF's reductions to the Letter of Credit are invalid under two alternate theories. At this early stage in the lawsuit, the undisputed facts do not entitle Lincoln Natinoal to judgment based on either the independence principle or its purported lack of consent to the Letter of Credit reductions.

### A. Independence Principle

The independence principle "posits that if the documents presented by [Lincoln National, the beneficiary] conform to the requirements stated in the letter of credit, the bank [TCF] may not look to the underlying contract between the customer [Sunset] and the beneficiary [Lincoln National] in determining whether to honor the demand." *Village of Long Grove v. Austin Bank of Chicago*, 644 N.E.2d 456, 458 (Ill. App. Ct. 1995); *Eakin v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 875 F.2d 114, 116 (7th Cir. 1989) (upon "tender of conforming papers," the bank must

"immediately pay" the beneficiary "without regard to the rights and defenses available on the underlying contract"); *see* 810 ILCS 5/5-103(d) ("Rights and obligations of an issuer to a beneficiary . . . are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it[.]"). In other words, the bank cannot refuse to honor the letter of credit by asserting that there is a breach in the underlying contract. *Jupiter Orrington Corp.*, 469 N.E.2d at 592. The one exception is for fraudulent breaches of the underlying contract; in that circumstance, the bank can assert it is not obligated to pay the beneficiary. *Id.*; *Village of Long Grove*, 644 N.E.2d at 459. The independence principle seeks to preserve the "commercial usefulness of the letter of credit as a vehicle of rapid and guaranteed payment in commercial transactions." *Village of Long Grove*, 644 N.E.2d at 459.

As such, TCF is confined to the conditions of the Letter of Credit in deciding whether to pay the beneficiary. *Pioneer Bank and Trust Co. v. Seiko Sporting Goods, U.S.A. Co.*, 540 N.E.2d 808, 811 (Ill. App. Ct. 1989). And "[w]hen the documents presented comply with the conditions specified in the letter of credit, the issuer [TCF] is authorized and obligated to pay. Conversely, when the documents do not comply, the issuer is not authorized to pay until discrepancies are waived by its customer [Sunset]." *Id.* Here, TCF and Lincoln National's Letter of Credit had only one condition: TCF's receipt of a sight draft and the original Letter of Credit. *See* (Compl. Ex. A.)

Here, Sunset presented the required documentation to Lincoln National to reduce the Letter of Credit by a total amount of $1,281,832.54. TCF had already disbursed these funds to Sunset, so upon Lincoln National's receipt of these documents, TCF went ahead and reduced the Letter of Credit by that amount. Lincoln National claims that this reduction was invalid for failing to follow the reduction procedure set forth in the Loan Agreement, which required review by Lincoln Nation

7

of the reduction followed by written notice to Sunset and TCF of the reduction amount. TCF, on the other hand, claims that the conduct of the parties indicates that "Lincoln National's written assent and TCF's written confirmation" was only a "ministerial, not substantive" requirement for reducing the Letter of Credit. (R. 24, Resp. at 6.)

TCF did not completely refuse to honor the Letter of Credit based on its determination that there was a breach in the underlying Loan Agreement. After all, TCF paid Lincoln National upon compliance with the Letter of Credit. The issue is whether TCF paid the correct amount, which is directly tied to the validity of the reductions in the Letter of Credit. The Court is unable to decide whether the independence principle applies when disputes exist regarding the validity of the outstanding balance of the Letter of Credit.

Moreover, TCF is entitled to examine the documents submitted in accordance with the Letter of Credit: the sight draft and original Letter of Credit. *Pioneer Bank and Trust Co.*, 540 N.E.2d at 788 ("The issuer deals only with the documents which must comply with the terms of the letter of credit."). A cursory examination of these documents could have revealed a discrepancy between the outstanding balance in the submitted Letter of Credit and sight draft ($3,189,693.69) versus TCF's understanding of the remaining balance ($1,907,861.15). Taken in a light favorable to TCF, this creates a disputed issue as to whether TCF's refusal to fully honor the Letter of Credit was based on a breach in the underlying Loan Agreement.

### B. Letter of Credit Reductions

Based on the facts presented in the pleadings, the Court has an insufficient factual basis upon which to determine "beyond a doubt" whether the amendments reducing the Letter of Credit from January 26, 2010 until April 28, 2010 were valid.

To the extent that Lincoln National and TCF rely on the provision of the Loan Agreement that outlines the procedure for amending the Letter of Credit, disputed factual issues remain. First, Lincoln National and TCF hold different views on the conditions that must be satisfied before reduction of the Letter of Credit. Lincoln National points to the language of the Loan Agreement, which states that reduction depends upon Lincoln National approving the reduction and providing notice to Sunset and TCF of the reduction amount. (Answer ¶ 12.) TCF did not admit that this precise procedure was followed for any of the reductions. (*Id.*) Instead, TCF asserts that based on its "course of dealing" with TCF, Lincoln National, and Sunset, once Lincoln National received the required documentation, "no additional express assent was required by Lincoln National or TCF." (R. 24, Resp. 5; Affirmative Defense ¶¶ 5-7) Whether TCF's previous interactions with Lincoln National created a reasonable indication that Lincoln National consented to the reductions at issue here is sufficiently in dispute. Discovery regarding the procedures and practices for amending the Letter of Credit is necessary.

Moreover, the UCC requires that amendments to the Letter of Credit must be in the form of a "record" that is authenticated by either a signature or in a way that conforms with the agreement of the parties. *See* 810 ILCS 5/5-104. The disputed reductions that TCF made to the Letter of Credit were triggered by Sunset presenting to Lincoln National the documentation required for the reduction. Despite the "record" and "signature" requirements, consent to an amendment to the Letter of Credit can be done "by implication" as well. *See* 810 ILCS 5/5-106. TCF contends that the course of conduct between the parties, which must be explored more in discovery, provides a basis to establish Lincoln National's alleged implicit consent to amend the Letter of Credit. (R. 24, Resp. at 6.)

At this point, the undeveloped factual record regarding application of the independence principle and validity of the Letter of Credit reductions prevents finding judgment in Lincoln National's favor. Therefore, the Court denies Lincoln National's Motion for Judgment on the Pleadings based on its Complaint. The Court also denies Lincoln National's Motion for Judgment on the Pleadings or to Dismiss TCF's Affirmative Defense Under Rule 12(b)(6). Finally, the Court denies TCF's Counterclaim seeking declaratory relief.

## II.   Joinder of Klarchek Family Trust Under Rule 20

Federal Rule of Civil Procedure 20(a) allows for permissive joinder of a party when two separate elements are met. First, the "right to relief" asserted against that party must arise out of the "same transaction, occurrence, or series of transactions or occurrence." Fed. R. Civ. P. 20(a). Second, there must be a "question of law or fact common to all defendants." *Id.* The Court applies Rule 20(a) to "promote trial convenience and expedite the final determination of disputes." *Dugan v. City of West Chicago*, No. 08 C 2223, 2008 WL 5423565, at *2 (N.D. Ill. Dec. 29, 2008) (Leinenweber, J.). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).

Here, TCF's claim for contribution against the Klarchek Family Trust arises out of the same "series of transactions" as the original lawsuit between Lincoln National and TCF. The transaction at issue between TCF and Lincoln National involves the validity of certain reductions to the Letter of Credit. TCF's contribution claim against the Klarchek Family Trust is also closely tied to the reductions in the Letter of Credit. For example, according to TCF's allegations, if the Letter of Credit reductions are found invalid because Sunset Village failed to turn over to Lincoln National

the required documentation, Sunset would be in default under its Letter of Credit Reimbursement Agreement with TCF. (Third Party Compl. ¶ 34.) The Klarchek Family Trust, as the guarantee to Sunset, could be liable for contribution. The original action and TCF's contribution action both hinge on the conduct of TCF, Lincoln National, and Sunset in reducing the Letter of Credit. This constitutes the same "transaction or series of transactions."

For similar reasons, TCF's contribution claim involves similar issues of fact and law. The validity of the reduction of the Letter of Credit, and how this affects the legal rights of TCF, Lincoln National, Sunset, and now the Klarchek Family Trust, involve largely overlapping legal and factual issues. As such, joinder is valid under Rule 20(a). The Court therefore denies Lincoln National's Motion to Dismiss the Third Party Complaint for Improper Joinder.

## **CONCLUSION AND ORDER**

For these reasons, the Court denies Lincoln National's motions.

						_____
						Virginia M. Kendall
						United States District Court Judge
						Northern District of Illinois

Date: March 7, 2011