# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6142 | **DATE** | 12/12/2011 |
| **CASE TITLE** | Lincoln Nat'l. Life Ins. Vs. TCF Nat'l Bank | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for protective order [62] is granted.

■[ For further details see text below.]      Docketing to mail notices.

## STATEMENT

    Defendant TCF National Bank ("TCF") issued a letter of credit to Defendant Sunset Village Limited Partnership ("Sunset Village"), listing Plaintiff The Lincoln National Life Insurance Company ("Lincoln National") as the beneficiary. The parties dispute whether the language of a loan agreement between Lincoln National and Sunset Village required reductions in the amount of the letter of credit; Lincoln National says the amount did not need to decrease because Sunset Village was in default on its obligations to Lincoln National. TCF now seeks to depose Mary Jo Potter, Lincoln National's Vice President and Associate General Counsel, because she issued two default notices to Sunset Village in connection with the loan agreement. Lincoln National filed a motion for a protective order under Rule 26(c)(1) to prevent TCF from going forward with Potter's deposition. For the below reasons, the Court grants Lincoln National's motion (Doc. 62).

    With its motion, Lincoln National submitted an affidavit from Potter, unrebutted by TCF. That affidavit states that as an in-house lawyer for Lincoln National, she provided legal advice regarding the underlying loans and letter of credit at issue in this case to the business decisionmakers already deposed in this litigation (including Vice Presidents David Spearman and Richard Millard). (Doc. 62-3 at ¶ 7.) Other than the notices of default she issued (she never heard anything in response), she has not had any contact with anyone from TCF or Sunset Village regarding the issues in the case. (*Id.* at ¶¶ 8, 10-11.) Potter works on an almost daily basis with the outside counsel retained by Lincoln National for this matter, has been "intimately involved in the legal decisions relating to all aspects of the litigation," and, though she has not entered an appearance in the case, is the lawyer "responsible for developing and implementing litigation strategy regarding this matter and for advising senior management as to the legal issues involved in the litigation." (*Id.* at ¶ 12.)

    Rule 26(c)(1) allows the Court to enter a protective orders preventing depositions "for good cause." Deposing opposing counsel, of course, is not normal litigation practice because it risks disrupting a party's preparation of its case and delving into areas protected by the attorney-client privilege and general prohibitions

**STATEMENT**

against discovery of attorney work-product. *See e.g., Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (noting that discovery against attorneys regarding the litigation is disruptive and causes "the standards of the profession [to] suffer"); *see also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (noting deposing opposing lawyers adds to the burden and costs of litigation and "[i]t is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.") If the case proceeds to trial, calling opposing counsel as a witness is even more problematic. *See Johnstone v. Wabick*, 220 F. Supp. 2d 899, 901 (N.D. Ill. 2002) (noting the numerous issues that arise when opposing counsel testifies at trial, including having to vouch for his own credibility.) Though the Seventh Circuit has not ruled definitively on the factors to consider when a party wants to depose opposing counsel, a number of courts in this District have applied the three-part test laid out in *Shelton*. *See Stalling v. Union Pac. R.R. Co.*, No. 01 C 1046, 2004 WL 783056, at *2 (N.D. Ill. Jan. 23, 2004) (applying *Shelton* and collecting cases in the District doing the same). Under *Shelton*, TCF, as the party seeking the deposition of opposing counsel, must demonstrate: (1) deposing counsel is the only practical means of obtaining the information sought; (2) the information is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327.

Here, Potter's unrebutted affidavit establishes that Potter is deeply involved in advising her client, Lincoln National, with respect to this case. TCF points out that Potter has not appeared in the case, but in-house lawyers typically do not file appearances even if they are heavily involved behind the scenes. Further, other than her action in sending the default notices, TCF does not controvert Potter's statements that she had no role in the case other than as a lawyer. In other words, any knowledge Potter has of the case came to her as a lawyer, and as such will be covered by both privilege and work product protection. Indeed, TCF cites no deposition testimony from the other deponents stating that Potter had some knowledge of the facts they did not have, or testimony that suggests she has any knowledge of the facts whatsoever. Finally, TCF has not shown that the non-privileged information knowledge Potter has, regarding the default notices, is crucial to the preparation of the case, or that Potter is the only person that TCF can talk to about those notices. Indeed, it appears that the parties do not dispute that the notices were sent, which, based on Potter's affidavit, appears to be the only non-privileged matter that her deposition could establish. TCF has not met its burden with respect to any of the *Shelton* factors.